James C. COPE d/b/a Cope Trucking Company, Plaintiff,

v.

UNITED STATES of America, Defendant,

and

Interstate Commerce Commission, E. T. & W. N. C. Transportation Co., Inc., Mason & Dixon Lines, Inc., and Dance Motor Lines, Inc., Intervening Defendants.

Civ. No. 2110.

United States District Court
W. D. North Carolina,
Asheville Division.

Heard July 29, 1963.

Decided Oct. 18, 1963.

Francis W. McInerny, Macdonald & McInerny, Washington, D. C., and Herbert L. Hyde, VanWinkle, Walton, Buck & Wall, Asheville, N. C., for plaintiff.

William H. Orrick, Jr., Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and William Medford, U. S. Atty., Asheville, N. C., for defendant the United States.

Robert W. Ginnane, Gen. Counsel of Interstate Commerce Commission, and Robert S. Burk, Atty., Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

James H. Epps, Jr., Epps, Powell, Weller, Taylor & Miller, Johnson City, Tenn., for defendant ET & WNC Transp. Co.

Frank K. Moore, Sanders & Moore, Kingsport, Tenn., for defendant Mason & Dixon Lines, Inc.

Fred F. Bradley, McChesney & Kinker, Frankfort, Ky., for defendant Dance Freight Lines, Inc

Before BELL, Circuit Judge, and CRAVEN and WARLICK, District Judges.

CRAVEN, District Judge.

The problems in this case arise from proceedings before the Interstate Commerce Commission involving Cope Trucking Company's purchase of Swain Motor Freight Line, along with the latter's operating rights and determination of the manner in which the operating rights of the two companies could be combined.

At the time this proceeding was instituted, the respective authorized operating authorities of Swain and Cope were as follows:

I.  *Swain*:  (1) Irregular route (not required to follow any specific highway route) from Knoxville, Tennessee, *to* Cherokee, Waynesville, Canton, Sylva, Dillsboro, Franklin, and Bryson City, North Carolina. This authority was for *one-way* movement only. (2) Movement over irregular routes (temporary) *between* Knoxville, Tennessee, and Andrews, Hayesville, Marble, Murphy, Robbinsville, and Topton, North Carolina. This authority was for *two-way movement* between the designated points.

II.  *Cope*:  (1) Movement over *regular* routes (certain designated highways) from Asheville, North Carolina, to Johnson City, Tennessee, to Deep Rock, North Carolina, and to Morganton North Carolina; and from Asheville *through* Canton, Waynesville, Cherokee, Sylva, Dillsboro, Bryson City, Franklin, Hayesville, Topton, Robbinsville, Andrews, Marble, and Murphy, North Carolina, *to* points on the North Carolina boundary at or near Tapoco, Murphy, and Hayesville. (2) *Irregular* route authority between Asheville and points within a fifty mile radius of Asheville, on the one hand; and, on the other, all points in North Carolina on and west of U. S. Highway No. 1 and outside of the fifty mile area surrounding Asheville.

For the sake of brevity, these various authorities will hereafter be referred to in the manner in which they are numbered above.

On February 16, 1960, Cope filed an application seeking authority under Section 5 of the Interstate Commerce Act (49 U.S.C.A. § 5) to purchase the property and operating rights of Swain, and, by separate application, sought approval of temporary operation over Swain's authorized territory under Section 210a(b) of the Act (49 U.S.C.A. § 310a(b)). The temporary operating authority was granted on March 8, 1960. By action of the Interstate Commerce Commission on August 18, 1960, the temporary operating authority in Swain No. 2 was extended until such time as Cope's application for

merger under Section 5 of the Act was finally determined.

The agreement to purchase having been worked out between Cope and Swain, these matters came on for consolidated hearing before a Board of Examiners for final determination: (1) Cope's application under Section 5(2) (a) of Interstate Commerce Act for permission to acquire Swain and 'Swain's certificates of authority; (2) Cope's *separate* application under Section 207 of the Act (49 U.S.C.A. § 307) seeking a certificate of public convenience and necessity authorizing continuance by it of operations under Swain No. 2, and authorizing also *two-way* movement over Swain No. 1. If that could not be granted, Cope requested in the *alternative*, at the hearing, that it be granted regular route authority between (1) Knoxville, Tennessee, and Deal's Gap, North Carolina, via Tennessee Highway No. 73 from Knoxville to Maryville, Tennessee, thence on Highway U.S. No. 129 to North Carolina Highway No. 28 at Deal's Gap; (2) between Knoxville, Tennessee, and Cherokee, North Carolina, via U. S. Highway No. 441 from Knoxville to Cherokee; (3) between Knoxville, Tennessee, and Marshal, North Carolina, via U. S. Highways 25 and 70, serving the intermediate point of Hot Springs, North Carolina.

Observe that the alternative regular routes sought by Cope would permit the following tie-ins or tackings with Cope's present authority:

a. Proposed regular route No. 1 would tie in with Cope No. 1, its regular route authority, which, in turn, can be tacked to Cope No. 2.

b. Proposed regular routes Nos. 2 and 3 would tie in with Cope No. 2. In either event, Cope would acquire a "gateway" from Knoxville, Tennessee, into all of eastern North Carolina on and west of U. S. Highway No. 1 outside the fifty mile radius of Asheville.

Nineteen public witnesses, all from western North Carolina and consisting of shippers using Cope's facilities,[1] appeared at the hearing and testified as to the continuing need for Cope's use of Swain No. 2 and as to the need for two-way authority over Swain No. 1. Five trucking companies[2] appeared at the hearing and protested the grant of any of the authority sought by Cope.

Generally stated, the protesting carriers' pertinent operations are as follows:

(1) BLUE RIDGE TRUCKING COMPANY: Blue Ridge operates a peddle run out of Asheville, serving an area confined to western North Carolina and bounded by Asheville on the north, Tuxedo on the south, and Murphy on the west.

(2) YOUNGBLOOD TRUCK LINES, INC.: Youngblood operates over irregular routes between points in North Carolina on and west of U. S. Highway No. 1, on the one hand, and, on the other, out of state points to the north and south. It also has an operation between Asheville, North Carolina, and Knoxville, Tennessee.

(3) DANCE FREIGHT LINES, INC.: Dance maintains terminals at Asheville, and Charlotte, North Carolina, and at Knoxville, Tennessee, *inter alia*, and operates between Winston-Salem and Charlotte, North Carolina, and Knoxville *via* Asheville, serving about sixty intermediate points in North Carolina alone.

(4) THE MASON & DIXON LINES, INC.: M & D maintains its home office in Knoxville, Tennessee. It operates over routes extending from Atlanta, Georgia, to New York

---

1. Three from Bryson City, three from Franklin, three from Waynesville, two from Murphy, one each from Robbinsville, Marble, and Andrews, and five from the extreme southwestern part of North Carolina.

2. Blue Ridge Trucking Company; Youngblood Truck Lines, Inc.; Dance Freight Lines, Inc.; The Mason & Dixon Lines, Inc.; ET & WNC Transportation Company.

City *via* Charlotte and High Point, North Carolina, these routes extending westward to Nashville, Tennessee. It has connecting routes between Nashville, Tennessee, and Charlotte and High Point, North Carolina, *via* Knoxville and Asheville and renders direct service to about 170 points in North Carolina.

(5) ET & WNC TRANSPORTATION COMPANY: ET & WNC maintains terminals, *inter alia*, at Asheville, Burlington, Charlotte, Durham, Greensboro, Hickory, and Winston-Salem, North Carolina, and at Knoxville, Tennessee. It operates over routes converging at Chattanooga, Tennessee, and extending to Bristol, Tennessee, on the north; Raleigh, North Carolina, on the east; Columbia, South Carolina, on the south; and Little Rock, Arkansas, on the west. Its operations include service between Knoxville, Tennessee, and about 230 points in North Carolina west of U. S. Highway No. 1.

The above carriers' common basis for protest was that they would lose a substantial volume of traffic moving between western North Carolina and Knoxville, Tennessee, were Cope granted the authority to operate on a through route between those major points. Three of the protesting carriers—Dance, M & D, and ET & WNC—have through operations between Knoxville, Tennessee, and central and eastern North Carolina. They raised the further issue of whether Cope should be allowed to tack the authority acquired from Swain with Cope No. 2, thus enabling it to conduct a similar and competitive through operation. Relative to this question, Cope virtually admitted that it was and had been handling only a negligible amount of through traffic between Knoxville and eastern North Carolina, and that full implementation of its potential in that area would constitute a new service on its part.[3] Cope vigorously opposed a no-tacking restriction.

The Examiners made the following findings and conclusions:

(1) That Cope's application under Section 5(2) (a) of the Act for permission to purchase Swain and its operating rights was "consistent with the public interest" and should be allowed subject to certain conditions.

(2) That the operating rights sought by Cope under its Section 207 application should be limited to the alternative proposed regular route authority, and that even then Cope be allowed authority only over alternative regular route No. 3 (between Knoxville, Tennessee, and Marshal, North Carolina) with no intermediate service at Hot Springs, North Carolina. It was the opinion of the Examiners that authority over that route would serve the public convenience and necessity (this was to be two-way authority) and would at the same time avoid giving Cope "unwarranted competitive advantage" in southwestern North Carolina. In order to avoid duplication of authorities held by Cope, the Examiners made the issuance of the new regular route authority conditional upon the cancellation of both Swain No. 1 and Swain No. 2. This served, too, to cut off any access that Cope might have to the southwestern North Carolina towns except via Marshal. The Examiners felt that this action was necessary in order to avoid giving Cope undue competitive advantage over other carriers in the southwestern North Carolina territory. The Examiners did not impose a no-tacking restriction.

Cope and three protesting motor lines[4] excepted to the Examiner's report, and the matter was heard upon these excep-

---

3. Record of hearing, pages 460–466; 483–485; 502; 514–515.

4. Dance Freight Lines, Inc.; The Mason & Dixon Lines, Inc.; ET & WNC Transportation Company.

tions by the Finance Review Board, a subordinate agency of the Interstate Commerce Commission. Cope's exception was that the regular route authority No. 3 authorized by the Examiners would result in excessively circuitous operations to and from a number of the thirteen North Carolina towns in southwestern North Carolina and would also render useless his terminal facilities at Bryson City, North Carolina. The protesting motor carriers, in their exceptions, again contended for an outright denial of all applications by Cope. They insisted that the competitive effect upon them would not be lessened by confining Cope's operations to the one regular route allowed by the Examiner, which route would provide him with the most direct route into Asheville. Protestants also reiterated their contention that Cope's main interest and desire was that of tacking the new authority with Cope No. 2 in order to provide a through service from Knoxville, Tennessee, to Asheville and points on and west of U. S. Highway No. 1 in North Carolina. Protestants argued that should the Commission not deny the applications outright, it should at least impose a restriction disallowing Cope to tack the new authority with Cope No. 2, hence preventing Cope from rendering a competitive through service between Knoxville and Cope No. 2.

The Finance Review Board took the following action: the Board disagreed with the Examiners' recommendation of approval of the Section 5 application on the condition that Swain Nos. 1 and 2 be cancelled upon the issuance of a new certificate authorizing two-way service over regular route No. 3 between Knoxville, Tennessee, and Marshal, North Carolina. The Board viewed the selection of regular route No. 3 as authorizing Cope to provide a new competition over the most direct route between Knoxville and Asheville, and through Asheville as a gateway to all points in North Carolina embraced by Cope No. 2 rather than facilitating a convenient and needed service between Knoxville and the thirteen towns in southwestern North Carolina.

The Board also recognized that were Cope confined to regular route No. 3, its operations to and from the thirteen towns would be excessively circuitous and would tend to make his terminal at Bryson City useless. Consequently, the Board decided that Cope should be granted authority to operate over regular routes Nos. 1 and 2 requested by it, i. e., (a) regular route No. 1: between Knoxville, Tennessee, and Deal's Gap, North Carolina, via Tennessee Highway No. 73 from Knoxville to Maryville, Tennessee, thence on U. S. Highway No. 129 to North Carolina Highway No. 28 at Deal's Gap and (b) regular route No. 2: between Knoxville, Tennessee, and Cherokee, North Carolina, via U. S. Highway No. 441.

The Board next decided (which is the real bone of contention in this case) that Cope should not be allowed to tack this newly-granted authority with Cope No. 2. The Board concluded that additional unrestricted competition at points east and south of Asheville would have a materially adverse effect on the operations of existing carriers in that area, particularly Dance, M & D, ET & WNC to the east and Blue Ridge to the south. It was ordered that the new authority be issued upon the cancellation of Swain No. 1 and the expiration of Swain No. 2.

The Board noted, with reference to its conclusion disallowing tacking, that "not a scintilla of evidence has been adduced through the shipper witnesses showing a need for such service"—referring to service east and south of Asheville that would have been allowed by the tacking.

In summary: (1) The Finance Review Board approved the purchase of Swain by Cope. (2) The Finance Review Board disallowed Cope's use of a regular route between Knoxville, Tennessee, and Marshal, North Carolina (that had been allowed by the Examiners), and granted authority for operations over regular route No. 1 between Knoxville, Tennessee, and Deal's Gap, North Carolina, and regular route No. 2 between Knoxville, Tennessee, and Cherokee, North Carolina, with the restriction that Cope not be allowed to tack this new authority

with Cope. No. 2 so as to provide through service between Knoxville, Tennessee, and points east and south of Asheville.

Following the Finance Review Board's decision, Cope petitioned for reconsideration and/or a further hearing in order to introduce additional evidence in refutation of the no-tacking restriction. The petition was denied by Division 3 of the Commission. An additional petition urging the Commission to find that the issue was one of general transportation importance and subject to further consideration was also denied. Thereupon, the matter was brought into the court for determination by a three-judge court. The court entered a temporary restraining order pending final decision, hence allowing Cope to continue operating as it had been before any of these proceedings were commenced.

Cope sets out these allegations of error in its complaint:

(1) To the extent that the Commission's order imposes a restriction forbidding Cope to tack the authority sought by it with its existing irregular authority (Cope No. 2), the order is arbitrary, capricious, in excess of statutory authority, unsupported by substantial evidence of record, and in violation of the Commission's own Rule of Decision in that:

(a) The Commission's conclusion that failure to impose the restriction would have a "materially adverse effect on the operations of the existing carriers" is unsupported by subsidiary findings of the Finance Review Board, is unsupported by evidence of record, and is contrary to the evidence.

(b) The imposition of the no-tacking restriction is in excess of the Commission's statutory authority in that it is an unreasonable term, condition, or limitation of a certificate and, therefore, violative of Section 208 of the Interstate Commerce Act. (49 U.S.C.A. § 308).

(c) The Commission erred in imposing the restriction in order to protect Blue Ridge when Blue Ridge

failed to except to the Examiner's findings.

(d) The Commission abused its discretion in denying Cope's petition for further hearing for the reason that the facts sought to be introduced at a further hearing establish that unrestricted temporary authority operations had not had a materially adverse effect on the operations of existing carriers and that the restriction was unnecessary.

Cope further asserts in its pre-trial brief that the Commission erred in that:

(1) The Finance Review Board's imposing the no-tacking restriction because no evidence was presented by shipper witnesses showing a need for the service to be derived by tacking amounted to imposing "public convenience and necessity" requirements on a merger application whereas the appropriate requirement is a showing of "consistency with the public interest."

(2) The no-tacking restriction constitutes a partial revocation of Cope's certificate of authority and is in violation of Section 212 of the Act (49 U.S.C.A. § 312).

## OPINION OF THE COURT

■ Our review is, of course, limited. If the Commission has not misapplied the law, if its ultimate conclusions are supported by substantial evidence, if it has not acted arbitrarily or capriciously, then we must sustain its action.

■ Cope raises certain questions more related to law than to fact of which disposition should first be made:

(1) Though Cope pursued it neither in brief nor in argument, it claims in its complaint that the Finance Review Board erred in imposing the no-tacking restriction in order to protect Blue Ridge when Blue Ridge had not excepted to the Examiner's non-restrictive order. We need not reach the procedural technicality asserted for the reason that Cope obviously misconstrued the Board's

conclusion. Relative to protecting Blue Ridge by the no-tacking restriction, the Board said simply, "Such restriction will also afford some protection to Blue Ridge in the area immediately south of Asheville, which (Cope) under the restriction will be required to continue serving only on an interline basis in operating to and from Knoxville." Its overall conclusion as to the restriction was by no means based upon a purpose to protect Blue Ridge alone, but was prompted by its consideration of the effect that tacking the various authorities would have on *all* the competing carriers in the involved area, three of which *had* excepted to the Examiner's report and order.

(2) Cope argues in its brief, but does *not* allege in its complaint, that the no-tacking restriction constituted a partial revocation of certificates of authority and was not done in accordance with Section 212 of the Interstate Commerce Act (49 U.S.C.A. § 312) which provides therefor and is unlawful. We find this contention to be without substance either in law or in fact. There was no proceeding constituting a revocation or suspension of any certificate of authority. Cope was deprived of nothing it had previously had or to which it had been entitled. Two different sets of authorities were involved here: those of Cope, and those of Swain that Cope was seeking *to acquire upon the Commission's approval.* The Commission approved the acquisition, but upon the *condition* that the Swain authorities *to be acquired* could not be tacked with Cope No. 2 (irregular route authority). Nothing was taken from Cope that required Section 312 action; a condition was simply attached to its acquiring *more.*

█ Cope's remaining allegations and contentions of error go basically to the matter of whether the Commission's conclusions and findings are supported by substantial evidence of record and are premised upon the proper application of the law.

In pertinent part, Section 5 of the Interstate Commerce Act (49 U.S.C.A. § 5) includes the following provisions:

5(2) (a): "It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b) of this paragraph—

"(i) for two or more carriers to consolidate or merge their properties or franchises, * * * or for any carrier * * * to purchase, lease, or contract to operate the properties, or any part thereof, of another * * *."

5(2) (b): "Whenever a transaction is proposed under subdivision (a) of this paragraph, the carrier or carriers * * * seeking authority therefor shall present an application to the Commission, and * * * the Commission * * * shall afford reasonable opportunity for interested parties to be heard. * * * If the Commission finds that, *subject to such terms and conditions and such modifications as it shall find to be just and reasonable*, the proposed transaction is within the scope of subdivision (a) of this paragraph and will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, *upon the terms and conditions, and with the modifications, so found to be just and reasonable* * * *."

(Emphasis supplied by the court.)

5(2) (c): "In passing upon any proposed transaction under the provisions of this paragraph, the Commission shall give weight to the following considerations, among others: (1) The effect of the proposed transaction upon adequate transportation service to the public * * *."

It was under the above statutory authority that the Commission was to consider and pass upon Cope's Section 5 application for authority to purchase

Swain's physical properties and its certificates of operating authority. Cope also made a separate application under Section 207 of the Act (49 U.S.C.A. § 307) seeking a certificate of public convenience and necessity for irregular route authority for two-way service between *all* the thirteen western North Carolina towns covered in Swain authorities Nos. 1 and 2, on the one hand, and, on the other, Knoxville, Tennessee. Of course, if this certificate had been granted, along with approval of Cope's Section 5 application for authority to purchase, it would have had the effect of making, in Cope's hands, Swain No. 1 two-way and Swain No. 2 permanent. *Both* applications were consolidated for hearing.

The following provisions of the Interstate Commerce Act are pertinent to Cope's Section 207 (49 U.S.C.A. § 307) application:

207(a) (49 U.S.C.A. § 307(a)): "Subject to section 310 of this title (210 of the Act), a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied * * *."

208(a) (49 U.S.C.A. § 308(a)): "Any certificate issued under section * * * 307 * * * shall specify the service to be rendered and the routes over which, * * * and * * * the territory within which, the motor carrier is authorized to operate; and *there shall,* at the time of issuance and from time to time thereafter, *be attached* to the exercise of the privileges granted by the certificate *such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require * * *."* (Emphasis supplied by court.)

The Finance Review Board, with reference to both statutes and both applications, concluded:

While we are mindful that restrictions generally are undesirable and tend to present problems of enforcement, on the basis of the evidence of the opposing carriers, the conclusion is warranted that additional unrestricted competition at points east and south of Asheville would have a materially adverse effect on the operations of existing carriers, and we would be derelict in our duty if we were to approve the applications free of a restriction against tacking of the Knoxville authority with (Cope's) present irregular route authority * * *. The alternative would be a denial of the application.

Cope complains that the conclusion disallowing tacking was conjectural and speculative and not founded upon concrete evidence; more particularly, Cope takes the position that the Board looked to no factual sources, such as the lack of detrimental effect on protesting carriers' operations during the eight-month period in which Cope was temporarily operating free from restrictions. But, there had not, prior to the hearing and review, been any adverse effect on the other carriers resulting from Cope's competition for the simple reason that Cope *had not been competing* except on a negligible scale. The Finance Review Board was careful to point out that Cope had "handled very little traffic, if any, moving between Knoxville and points east of Asheville in his irregular-route territory, and not a scintilla of evidence has been adduced through the shipper witnesses showing a need for such service." The evidence supports these inferences: (1) that the protecting carriers were operating their equipment at less than capacity; (2) that they were operating at a very narrow margin of profit; (3) that Cope's area of operations would be substantially

duplicitous of theirs if allowed to tack; (4) that Cope would divert traffic from all of them if allowed to tack. That Cope had not *already* adversely affected the protesting carriers was not and is not controlling, for Cope was in complete control of the evidence in that respect. If there was no evidence of detriment, it was because Cope had not yet substantially competed with the other carriers east of Asheville. The Board's conclusion of the likelihood of diversion of traffic by Cope is a not unreasonable projected judgment peculiarly within the Board's expert domain. And because of Cope's ability to control pertinent evidence, the Commission properly exercised its administrative discretion in denying its petition for a rehearing.

Cope further asserts that error was committed in that the improper standard of "public convenience and necessity" was applied in determining the no-tacking restriction rather than the appropriate "consistent with the public interest" standard, and that the disallowing of tacking falls within the Section 5 application. This assertion is premised upon the Board's basing its conclusion partially upon the lack of shipper evidence demonstrating a need for the service to be accomplished by tacking. In deciding a like contention in Ratner v. United States, D.C., 162 F.Supp. 518, aff'd per curiam, 356 U.S. 368, 78 S.Ct. 913, 2 L.Ed.2d 842 (1957), the court wrote:

"(S)hould this case be decided upon a mere play of words? The Court should not ignore the findings of the Commission that the proposed acquisition of control would create a new service in an area already adequately served by motor carriers, and that such a new service could draw additional traffic only from existing carriers to the detriment of said existing carriers. Such a result may not properly be found to be consistent with the public interest. The term 'public interest' as used in Section 5 clearly embraces the interest of competing carriers. Their interest and that of the general public is the same in preventing uneconomic transportation. The entry of plaintiff into the area would disrupt the competitive balance with harmful effect on the competing carriers without compensatory benefits to the public, and would not foster sound economic conditions in the industry. *Accordingly, the transaction has not been shown to be consistent with the public interest.*"

Assuming, without deciding, that the Board's concern over lack of shipper evidence was improperly interjected in this proceeding, there still remains substantial evidence of record supporting the conclusion that an unrestricted grant of authority to Cope would have a materially adverse effect on competing carriers in the proposed area and would not, therefore, be consistent with the public interest.

The restrictions and conditions imposed are "just and reasonable" and accord with the statutory authority granted the Commission.

Affirmed.