**BELL LINES, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

and

**Carolina Freight Carriers Corporation and Kilgo Motor Freight, Inc., Intervening Defendants.**

Civ. A. No. 3090.

United States District Court
S. D. West Virginia,
Charleston Division.

Jan. 20, 1967.

James W. Lawson, Macdonald & McInerny, Washington, D. C., W. T. Brotherton, Jr., Amos & Brotherton, Charleston, W. Va., for Bell Lines, Inc.

Donald F. Turner, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Milton J. Ferguson, U. S. Atty., Huntington, W. Va., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for United States.

Robert W. Ginnane, Gen. Counsel, Raymond M. Zimmet, Atty. Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Frank W. Snepp, Jr., McDougle, Ervin, Horack & Snepp, Charlotte, N. C., Guy H. Postell and Frank D. Hall, Atlanta, Ga., for Carolina Freight Carriers Corp. and Kilgo Motor Freight, Inc.

Before BOREMAN, Circuit Judge, and FIELD and CHRISTIE, District Judges.*

CHRISTIE, District Judge:

This action is an appeal pursuant to 28 U.S.C.A. §§ 1336, 1398, 2284 and 2321 to 2325, inclusive, and 49 U.S.C.A. §§ 305(g) and 17(9), to enjoin, annul and set aside certain orders of the Interstate Commerce Commission (Commission) authorizing the transfer from Kilgo Motor Freight, Inc. (Kilgo) to Carolina Freight Carriers Corporation (Carolina) of certain operating authorities—most particularly the authority to serve Pittsburgh, Pennsylvania, as an off-route point in connection with Carolina's right to serve all points in the states of North Carolina, South Carolina, Georgia and Florida.

* Three-Judge Court convened pursuant to 28 U.S.C.A. 2284 and 2325.

## GENERAL FACTUAL BACK-GROUND

By joint application filed October 5, 1961, Carolina and Kilgo sought authority under Section 5 of the Interstate Commerce Act, 49 U.S.C.A. 5,[1] for the purchase by the former of certain of the operating rights of the latter. The rights sought to be purchased and transferred include those for transportation of general commodities, with exceptions, over regular routes extending between Kings Mountain, North Carolina and New York, serving numerous intermediate and off-route points. The Kings Mountain-New York route is along highways through North Carolina, Virginia, the District of Columbia, Maryland, Delaware, Pennsylvania and New Jersey. Included also among the rights sought to be purchased by Carolina is the authority to serve Pittsburgh as an off-route point in connection with regular route operations between Kings Mountain and New York which may be utilized for transporting general commodities between Pittsburgh and numerous specified intermediate and off-route points, including principal traffic centers in North Carolina. The Kings Mountain-New York route, at its nearest approach, is in excess of 200 miles from Pittsburgh.

Carolina presently holds authority, as here material, for the transportation of general commodities, with exceptions, between Clover, South Carolina and points and places within North Carolina and South Carolina within 35 miles of Clover, and points and places in Florida, Georgia, South Carolina and North Carolina. By combining Carolina's existing rights with Kilgo's previously mentioned rights, Carolina would be authorized to transport general commodities between Pittsburgh and all points in Florida, Georgia, South Carolina and North Carolina, provided such shipments were moved via any point within 35 miles of Clover.

## PROCEEDINGS BEFORE COMMISSION

By order dated December 19, 1961, as supplemented by order dated May 18, 1962, the Commission authorized Kilgo to lease the involved operating rights to Carolina pending determination of the application to purchase. Hearings were held in August and September of 1962, during which eleven motor carriers, including plaintiff Bell Lines, Inc. (Bell), appeared in opposition to the application. On February 26, 1963, the Hearing Examiner's recommended report and order was served, setting forth a summary of the evidence and findings of fact. It found the existence of dormancy and no need for reactivation as to off-routes to Reading, Pottsville, Lebanon, Harrisburg, Allentown, Schuylkill Haven, Pottstown, Johnstown, Hazelton, Phoenixville, Hagerstown, Cumberland and Fredrick, and recommended as a condition to approval of the application the cancellation of these off-route points. As to Pittsburgh, the off-route point with which we are here concerned, the Examiner seemingly found a status of non-use and want of sufficient showing of a need for its reactivation. But, unlike his recommendation as to the other off-route points mentioned, the Examiner did not recommend a cancellation of the Pittsburgh authority, instead only a restric-

1. "(2) (a) It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b) of this paragraph—

"(i) for two or more carriers to consolidate or merge their properties or franchises or any part thereof, into one corporation for the ownership, management, and operation of the properties theretofore in separate ownership; or for any carrier, or two or more carriers jointly, to purchase, lease, or contract to operate the properties, or any part thereof, of another; or for any carrier, or two or more carriers jointly, to acquire control of another through ownership of its stock or otherwise; or for a person which is not a carrier to acquire control of two or more carriers through ownership of their stock or otherwise; or for a person which is not a carrier and which has control of one or more carriers to acquire control of another carrier through ownership of its stock or otherwise; or * * *."

tion was recommended. His findings and conclusions in this regard were as follows:

"(N)o evidence was adduced of any shipments transported by vendor (Kilgo), or by Vendee (Carolina), under temporary authority, between Pittsburgh and points east or north thereof or as to Virginia, or of a need therefor. Therefore, while the findings herein shall not require cancellation of service at Pittsburgh, as a condition to approval, they shall require acceptance of a restriction to operations to or from points on the unified route in North Carolina, South Carolina, Georgia and Florida to prevent vendee (Carolina) from competing with existing carriers for traffic between Pittsburgh and points in Virginia and north thereof."

The report goes on to prescribe certain standards the applicants will be required to meet to justify the transfer and recommends that the application be approved subject to certain conditions, the condition relating to the Pittsburgh off-route point being that such point be restricted to traffic originating at or destined to points on the unified routes of Carolina in North Carolina, South Carolina, Georgia and Florida. Bell, whose existing authority permitted it to conduct operations, among other places, between Pittsburgh, on the one hand, and on the other, points in South Carolina and points in North Carolina on and west of U. S. Highway 301, filed exceptions to the recommended report and order, one of which being that the Examiner erred in "failing to find that vendor's (Kilgo's) Pittsburgh authority is dormant and nontransferable, and that no need has been shown for revitalization of the dormant authority." The Commission, by a report dated December 3, 1963, Division 3, modified the Examiner's conclusions slightly in other respects but affirmed his conclusions as to Pittsburgh.

## COMMISSION'S FINDINGS AND ALLEGED INADEQUACIES

In its December 3, 1963 Order, the Commission adopted the Examiner's

standard as to the burden of proof the applicants need meet in regard to off-route points. They are as follows:

" * * * (M)any of vendor's off-route points in Maryland and Pennsylvania have populations in excess of 20,000, with surrounding trade territories, and are not reasonably near the regular route to which they are appurtenant but rather in some instances, are hundreds of miles off-route in areas foreign to those generally served by vendor. In this highly unusual situation, we concur in the opinion of the examiner that such points take on the characteristics of principal or terminal points, and that vendor is not relieved from the necessity of establishing with certainty either that its authority to serve the relatively distant and densely populated off-route points in Maryland and Pennsylvania has remained active through the rendition of a service, or, in the event such authority is dormant, that a need exists for service to and from such points."

Thus, the Commission found that the burden was Kilgo's to establish with "certainty" that the service had "remained active" or, if not, that a "need exists" therefor.

The Commission, in its December 3, 1963 report, stated,

"We agree with the examiner that vendor has provided the shipping public with substantial service under its general-commodity authority between many points on its regular routes and in the irregular-route territory it is authorized to serve, including, but not limited to, service at Danville, Lynchburg, Pittsburgh, Norristown, Scranton, and York, and that it is not required to submit evidence of operations to and from every authorized point, or in connection with all combinations of its routes, in order to show that its operations have been continuous and substantial."

■ However, the Examiner's report failed to make a positive finding that

Kilgo under its authority had rendered substantial service to Pittsburgh as an "off-route" point or that a need exists therefor, and this deficiency was one of the reasons assigned by Bell in its exceptions. Later recognizing that it had misinterpreted the Examiner's report in this regard (see last quote above from Commission's December 3, 1963 report), the Commission determined that its inclusion of Pittsburgh with Danville, Lynchburg, Norristown, Scranton and York as points where substantial service had been provided, *though erroneous,* would in nowise affect its ultimate conclusion. Thus, without an affirmative finding by either the Examiner or the Commission that Kilgo had rendered substantial service to Pittsburgh as an "off-route" point or that a need existed for such service, the Commission denied Bell's petition for reconsideration of its December 3, 1963 order. In so doing, we think it committed error prejudicial to Bell.

### APPLICABLE LAW AND CONCLUSIONS

■■ It is well settled that the Administrative Procedure Act, 5 U.S.C.A. §§ 1001–1011, is applicable to Interstate Commerce Commission proceedings. Chicago & E. I. R. Co. v. United States, 107 F.Supp. 118 (S.D.Ind.1952), aff'd. 344 U.S. 917, 73 S.Ct. 346, 97 L.Ed. 707. The Act provides [5 U.S.C.A. § 1007 (b)]:

"* * * All decisions (including initial, recommended, or tentative decisions) shall become part of the record and include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law or discretion presented on the record; and (2) the appropriate rule, order, sanction, relief, or denial thereof."

Notwithstanding the broad discretion given the Commission under Section 5 of the Interstate Commerce Act,[2] the absence of the required findings is fatal to the validity of an administrative decision regardless of whether there may be record evidence to support proper findings. Anglo-Canadian Shipping Co., Ltd. v. Federal Maritime Commission, 310 F.2d 606 (9th Cir. 1962).

■■ While it is true that an agency need not make findings on collateral issues, Brotherhood of Maintenance of Way Employees v. United States, 221 F. Supp. 19 (E.D.Mich.1963), aff'd. 375 U.S. 216, 84 S.Ct. 341, 11 L.Ed. 270, yet the courts are not required to speculate as to the basis for an administrative agency's conclusions. Northeast Airlines, Inc. v. C. A. B., 331 F.2d 579 (1st Cir. 1964). Nor may they accept counsel's *post hoc* rationalization for agency action. Burlington Truck Lines v. United States, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207.

■ While defendants' position that the Commission need not explain a decision's inconsistency with prior decisions (when their findings are adequate and explain the basis) in order for it to be upheld is correct, M & M Transportation Co. v. United States, 128 F.Supp. 296 (D.C.Mass.1955), aff'd. 350 U.S. 857, 76 S.Ct. 102, 100 L.Ed. 762, if the Court is to uphold the Commission's order at all it must be upon the same basis articulated in the order by the Commission itself. Burlington Truck Lines v. United States, supra. Insofar as pertinent to this controversy, the test enunciated by the Examiner and adopted by the Commission required Kilgo to show with certainty that its authority to serve the off-route point of Pittsburgh had remained active through the rendition of service or in the event the authority was dormant,

---

2. 49 U.S.C.A. § 5(2) (b), provides,
 "* * * If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed transaction is within the scope of subdivision (a) of this paragraph and will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable: * * *."

that a need exists for the service. The portion of the Commission's July 16, 1964 order, removing Pittsburgh from its December 3, 1963 order, dealing with "substantial service," was a circumvention of the application of this test in that it leaves the findings void of a determination that Kilgo's prior Pittsburgh service had been substantial, or if dormant, that a need exists for its reactivation. This is best demonstrated by comparing the Commission's finding of need regarding Cumberland [3] in this same report with its statements concerning Pittsburgh.[4] The latter statements begin by referring to five shipments by Kilgo under its original authority. This has little bearing on the question of need and gives credence to the contention that the original determination was based in part on a belief that the Pittsburgh authority had remained active. Reference is next made to shippers' testimony. One sought additional service to avoid uneconomical hauls of frozen concentrates with its own trucks from Florida. Another was not satisfied with the service it had been getting. A third

testified to a "need for service from Pittsburgh to North Carolina, South Carolina, Georgia, and Florida," and the last testified that Carolina had given it improved service to those four states. The Commission also stated that there had been no evidence by Bell of loss of Pittsburgh traffic as a result of Carolina's 8 months' operation under temporary authority.

■■ It is difficult for this Court to accept the contention that the "need for service from Pittsburgh to North Carolina," et cetera, testified to by the instrument manufacturer, is the equivalent of a *finding of need for such service by the Commission*. We recognize the Commission's experience in this area and the intent of Congress to grant it wide authority to make Section 5 determinations with a minimum of judicial interference. Cope v. United States, 222 F.Supp. 596 (D.C.N.C.1963). On the other hand, we remain cognizant of the Administrative Procedure Act's purpose to offer a degree of protection from unrestrained and unwarranted bureaucratic action.[5] Judicial deference to expertise

3. "The situation at Cumberland is different. The supporting shipper from that point produces a number of chemical products in vast quantities which it ships over a wide territory served by applicants in a single and joint-line operations. There is a definite deficiency in the available common carrier service; and there is the possibility that, if that deficiency can be overcome by addition of vendee's service, the volume tendered by this shipper to common carriers will be substantially increased."

4. "Considering the off-route point of Pittsburgh: Vendor's abstract shows five shipments thereto: the Florida shipper of frozen concentrates seeks additional motor carrier service to spare its private fleet from handling uneconomical one-way hauls thereto, and to minimize the possibility of equipment shortages experienced in the past; the Clairton shipper of coal tar and synthetic resins was not satisfied with the service it had been getting to North Carolina, South Carolina, and Florida; the instrument manufacturer testified to a need for service from Pittsburgh to North Carolina, South Carolina, Georgia, and Florida; and the

Frisco manufacturer of chemicals testified that vendee has given it improved service from its Pittsburgh warehouse to points in the said four states.

"We have no evidence of Pittsburgh shipments by vendor (or vendee under temporary authority) to or from any other state within vendor's authority or of a need therefor. Neither was there evidence by protestants of Pittsburgh traffic lost to vendee as a result of the temporary authority, although vendee had operated thereunder for 8 months prior to the hearing. Therefore, as to Pittsburgh, our findings will impose the four-state service restriction recommended by the examiner, which applicants have indicated will be acceptable to them."

5. The report of the Senate Judiciary Committee, Administrative Procedure Act, Legislative History (1946), page 210, concerning Section 7(b), states:

"The requirement that the agency must state the basis for its findings and conclusion means that such findings and conclusions must be sufficiently related to the record as to advise the parties of their record basis. Most agencies will

# 46

of the Commission is not boundless and expertise in itself is not sufficient to sustain a decision. Eastern Central Motor Carriers Ass'n. v. United States, 239 F. Supp. 591 (D.C.D.C.1965).

There are numerous cases dealing with limited scope of judicial review of administrative action and we are fully cognizant of those restraints and hope to adhere to them. But we cannot ignore the fact that here the Commission created the criteria for transferring the Pittsburgh authority and that the Administrative Procedure Act provides the manner for doing it and the scope to which the Courts are to examine the process to see that these requirements are met.[6]

 We deem it unnecessary to pass upon the question of whether there is sufficient substantive evidence to support the *post hoc* rationalization of need that defendants' counsel urge upon us, since it is impossible for us to determine whether the basis of the Commission's ultimate decision was need, prior service by Kilgo, temporary service by Carolina,

or other factors. The thrust of our decision is that the requirements of the Administrative Procedure Act are fundamental to due process and that all administrative decisions shall include such findings and conclusions as are reasonably necessary to intelligently inform the parties involved of the purport thereof, as well as the reasons therefor. The manner and method employed by the Commission in abrogating a prior erroneous finding and drawing a new conclusion, without making any new findings of fact to justify the new conclusion, was not the proper way to meet and dispose of the exception Bell had taken to the earlier finding and was violative of the requirements of the Administrative Procedure Act.

Accordingly, this action will be remanded to the Commission with direction to make, in accordance with its own previously established standards and the requirements of the Administrative Procedure Act, clear and precise findings and conclusions on the issues of the dor-

---

do so by opinions which reason and relate the issues of fact, law, and discretion. Statements of reason, however, may be long or short as the nature of the case and the novelty or complexity of the issues may require.

"Findings and conclusions must include all the relevant issues presented by the record in the light of the law involved. They may be few or many. A particular conclusion of law may render certain issues and findings immaterial, or vice versa. Where oral testimony is conflicting or subject to doubt of its credibility, the credibility of witnesses would be a necessary finding if the facts are material. It should also be noted that the relevant issues extend to matters of administrative discretion as well as of law and fact. This is important because agencies often determine whether they have power to act rather than whether their discretion should be exercised or how it should be exercised. Furthermore, without a disclosure of the basis for the exercise of failure to exercise discretion, the parties are unable to determine what other additional facts they might offer by way of rehearing or reconsideration of decisions."

6. 5 U.S.C.A. § 1009(e):

"So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case subject to the requirements of sections 1006 and 1007 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (6) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error."

mancy and need for service at the Pittsburgh off-route point.

Having thus determined that the case must be remanded for further findings and conclusions on these issues, it becomes unnecessary for us to consider at this time the remaining exceptions relied upon by Bell in opposition to the transfer.

Remanded.