GLOSSON MOTOR LINES, INC., a Corporation, Lexington, North Carolina, Plaintiff,

v.

The UNITED STATES of America and the Interstate Commerce Commission, Defendants,

and

Akers Motor Lines, Inc., and Pilot Freight Carriers, Inc., Intervening Defendants.

No. C–85–G–66.

United States District Court
M. D. North Carolina,
Greensboro Division.

July 27, 1967.

468

York, Boyd & Flynn, Greensboro, N. C., and McInnis, Wilson, Munson & Woods, Washington, D. C., for plaintiff.

Donald F. Turner, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., William H. Murdock, U. S. Atty., Greensboro, N. C., Robert W. Ginnane, Gen. Counsel, and Manny H. Smith, Atty., Interstate Commerce Commission, Washington, D. C., for defendants.

McLendon, Brim, Holderness & Brooks, Greensboro, N. C., and Rea, Cross, Knebel & Kinnaird, Washington, D. C., for intervening defendants.

Before J. SPENCER BELL* and CRAVEN, Circuit Judges, and EDWIN M. STANLEY, District Judge.

EDWIN M. STANLEY, District Judge.

This is an action by the plaintiff, Glosson Motor Lines, Inc. (Glosson), to set aside a report and order of the Interstate Commerce Commission (Commission), Finance Review Board, entered September 14, 1965, in I.C.C. Docket No. MC–F–8485, Glosson Motor Lines, Inc.—Purchase—Fober Freight Lines, Inc. and in I.C.C. Docket No. MC–F–8035, Fober Freight Lines, Inc.—Purchase (portion) —H&B Freightways, Inc. (John H. Krick, Trustee), 97 M.C.C. 668 (1965), which denied Glosson's application in No. MC–F–8485 for authority under § 5(2) of the Interstate Commerce Act (Act), 49 U.S.C.A. § 5(2), to purchase the interstate operating rights of Fober Freight Lines, Inc. (Fober), as well as those rights which Fober sought to acquire from H&B Freightways, Inc. (H&B) in No. MC–F–8035, upon a finding that the proposed transactions were not consistent with the public interest. Glosson also seeks review of an order of the Commission, Division 3, acting as Appellate Division, entered March 18, 1965, which denied petitions for reconsideration and further hearing. Fober and H&B were permitted to intervene as parties plaintiffs, and Akers Motor Lines, Inc. (Akers), and Pilot Freight Carriers, Inc. (Pilot), were permitted to intervene as parties defendants.

Glosson's motion for an order temporarily restraining the effectiveness of the Commission's order was denied for the reason that the Commission voluntarily agreed to a postponement of the effective date of its order until thirty days after the entry of judgment by this Court. By stipulation, the case was submitted

---

\* Judge J. Spencer Bell, one of the designated members of the Three-Judge Court to which this case was submitted, died before this opinion was prepared.

However, after arguments. Judge Bell expressed himself in accord with the conclusions reached herein.

upon the record of the proceedings before the Commission, and the briefs and oral arguments of the parties.

On January 2, 1962, Fober, a carrier holding interstate operating authority to transport commodities, generally, between Boston, Massachusetts, and Hartford, Connecticut, with services authorized at numerous other points in the New England States, filed an application in No. MC–F–8035 seeking Commission approval under § 5(2) to purchase certain interstate operating rights of H&B, a motor carrier which had been adjudicated a bankrupt on March 3, 1961. The major operating rights of H&B extended from New York City to Hartford, Connecticut, with authorized service at other points in the New England and Middle Atlantic States. Under the proposed unification of the Fober and H&B certificates, Fober would have been able to conduct single line motor carrier services between Boston and New York via Hartford, and to perform additional single line services within and between numerous points in the New England States. On January 23, 1962, the Commission granted Fober's application under § 310a(b) of the Act, 49 U.S.C. § 310a(b), for authority temporarily to lease the operating rights of H&B, and Fober commenced operating under such temporary authority on February 12, 1962.

Several carriers in the New England areas filed protests to the Fober–H&B application in No. MC–F–8035. The thrust of their opposition was that the H&B rights had become dormant and should not, under the standards employed by the Commission in § 5 applications, be revitalized, absent a showing that such revitalization was or would be required by present or future convenience and necessity. A hearing was held on the application before Examiner David S. Letts on October 29, 1962. In a report and order served May 1, 1963, Examiner Letts recommended approval of the application. A number of the protesting New England carriers filed exceptions to the report recommended by Examiner Letts and, upon the reply of the applicant, the matter became ripe for submission to the Commission for decision.

On June 26, 1963, in No. MC–F–8485, Glosson [1] filed application under § 5(2) of the Act to purchase the interstate operating rights of Fober, as well as certain interstate operating rights which Fober was seeking to acquire from H&B in No. MC–F–8035. By order dated July 15, 1963, the Commission granted Glosson temporary authority to lease all of the interstate operating rights of Fober, including those operating rights which Fober sought to purchase from H&B, and Glosson commenced such temporary operations on August 5, 1963.

On July 3, 1963, notice of Glosson's application before the Commission was published in the Federal Register. The notice required protests to the granting of the application to be filed within thirty days. Timely protests were filed by a number of carriers in the New England area. Subsequently, Glosson offered certain amendments to its application so as to restrict the use of the operating rights which it sought to acquire from Fober. These amendments satisfied the interests of the motor carriers who had filed protests. However, by order entered October 31, 1963, the Commission, Division 3, found the Glosson–Fober application in No. MC–F–8485 to require the holding of an oral hearing, and that the Fober–H&B application in No. MC–F–8035 should be reopened for further hearing on a consoli-

---

1. As summarized by the Commission, Glosson "possesses authority, in part, to transport, over irregular routes, northbound, from numerous specified points and areas in North Carolina (1) a wide range of textiles to certain points in Middle Atlantic territory, including New York City, and (2) furniture to certain points in the Middle Atlantic area and most of the New England States. It also possesses authority to transport general commodities, with exceptions, southbound from certain points in the Middle Atlantic area, including New York City, to points in a designated area in North Carolina."

dated record with the Glosson–Fober application. By order entered December 9, 1963, the cases were assigned for hearing and further hearing before Examiner Eldon J. Miller.

On January 27, 1964, the Commission permitted the intervening defendants, Akers[2] and Pilot,[3] to intervene in both proceedings. On April 27 and 28, 1964, a hearing on the consolidated record was conducted before Examiner Miller in Hartford. At the hearing, the New England carriers noted that they were withdrawing their protests as a result of a stipulation entered into with Glosson, by the terms of which Glosson agreed that, should the Commission approve its application, it would restrict its new service to a so-called "overhead service" between points in New England, on the one hand, and, on the other, points in the southeast.

On January 29, 1965, Examiner Miller served his report and recommended order, in which he found, among other things, that neither the Glosson–Fober transaction proposed in No. MC–F–8485, nor the Fober–H&B transaction proposed in No. MC–F–8035, was consistent with the public interest, and recommended that both applications be denied. Following the filing of exceptions and replies, the Finance Review Board, by report and order entered September 14, 1965, found,

as recommended by Examiner Miller, "that the proposed transactions have not been shown to be consistent with the public interest and that the applications should be denied." On March 18, 1966, the Commission, Division 3, acting as an Appellate Division, denied Glosson's petition for reconsideration and further hearing for the reason, among others, that the petition and replies raised no new or material matter of fact or law in addition to those discussed by the Finance Review Board in its report. This action followed.

Basically, Glosson contends that the order of the Commission is arbitrary and capricious, and should be vacated and set aside, for the reasons that (1) the Commission permitted intervention and opposition by Akers and Pilot more than six months after publication of the Glosson application in the Federal Register, and after all other opposition to the application had been withdrawn, (2) the Commission neglected to sufficiently and adequately inform, or otherwise notify, the parties of record as to the reasons and purposes for reopening for a further hearing the proceedings in No. MC–F–8035, and failed to inform the parties that additional or supplemental evidence was expected by the Commission in the reopened hearings, (3) the Commission, when the parties were informed, through

2. Akers possesses authority, in part, to transport general commodities over regular and irregular routes, the former extending between points located in Massachusetts, Connecticut and Rhode Island, the New York metropolitan area, most of New Jersey, eastern Pennsylvania as far west as Harrisburg and as far north as Scranton, including the Philadelphia area, and Baltimore on the east, and almost all points in North Carolina, South Carolina and Georgia on the south, except that in North Carolina at service points east of U. S. Highway 1 over irregular routes and those in eastern South Carolina, also irregular routes. It has no authority to perform local operations in New England as its authority in that area is restricted to overhead service between points it is authorized to serve in New England, on the one hand, and, on the other, points south of the Vir-

ginia-North Carolina State line. Akers specializes in the transportation of textiles and textile related commodities.

3. Pilot possesses authority, in part, to transport general commodities, so far as pertinent, over irregular routes, between points in North Carolina, South Carolina and parts of Georgia, on the one hand, and, on the other, points in New York and New Jersey, and between New York City and points in New Jersey within fifteen miles of New York City, on the one hand, and, on the other, Boston. It also possesses authority to transport general commodities over a regular route between New York City and New Bedford, Massachusetts via New Haven and Providence, serving all intermediate points, the off-route point of Norwich, Connecticut, and those within fifteen miles of Providence and New York City.

its later decision, as to the scope of evidence and the procedure contemplated in reopening the H&B proceeding, refused to grant Glosson a further hearing so as to afford it an opportunity to meet the objections stated by the Hearing Examiner and the Finance Review Board, and (4) the findings of the Commission concerning the operations of Akers and Pilot, and the necessity of protecting their operations between points in New England, on the one hand, and, on the other, points in North Carolina, were not based upon substantial evidence. It is the contention of the defendants that the sole question for decision is whether the conclusions of the Commission that the proposed transactions had not been shown to be consistent with public interest, and that the applications should be denied, are supported by adequate findings based upon substantial evidence, and is in accord with applicable law.

Section 5(2) (a) (i) of the Act, 49 U.S.C. § 5(2) (a) (i), permits, subject to the approval and authorization of the Commission, one carrier to acquire control of another carrier. The Commission, in considering such an application, is authorized, before approving the transaction, to impose such terms and conditions, and such modifications, it finds to be just and reasonable, and to withhold its approval unless it finds the proposed transaction to be "consistent with the public interest." 49 U.S.C. § 5(2) (b).

█ Before discussing the contentions of the parties, it should be emphasized that the scope of judicial review of the administrative action of the Commission is restricted, and that we, as a reviewing court, "may not set aside the ultimate findings of the Commission unless they are unsupported by substantial evidence on the record considered as a whole, involve error of law, or are arbitrary or capricious or constitute an abuse of discretion." State of North Carolina v. United States, 210 F.Supp. 675 (D.C. 1962). It is with the Commission, with its expert judgment and considerable knowledge of the transportation indus-

try, that Congress has left the task of determining whether a proposed transaction is consistent with public interest, and its findings and orders must be approved unless it exceeded "the statutory limits within which Congress confined its discretion and its findings are adequate and supported by evidence * * " McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544 (1944). This is so even though we might have reached a different conclusion on the facts presented.

█ We find no merit in Glosson's contention that the Commission acted erroneously, and in violation of its own rules, when it permitted intervention and opposition by Akers and Pilot more than six months after Glosson had published its application in the Federal Register. The pertinent rules of practice of the Commission, in effect at the time the order allowing intervention was entered, permitted intervention beyond thirty days after Federal Register publication if an oral hearing was to be held. Thus, since Akers and Pilot filed their petition to intervene after hearing had been ordered in the two proceedings, and at a time when the protests of the various New England carriers were still on file with the Commission, the Commission clearly acted within its discretionary authority, and in accord with its rules of practice, when it granted the petition to intervene.

█ Glosson's next contention is that it was never adequately notified or informed as to the reasons and purposes for reopening the proceedings in No. MC–F–8035, or that the Commission expected additional or supplemental evidence at the reopened hearing. The feeling of frustration and disappointment experienced by Glosson, when it learned that Examiner Letts and Examiner Miller had reached different conclusions with respect to the transaction proposed in the Fober–H&B application, is understandable. Nevertheless, it cannot be said that the action of the Commission in ordering a further hearing on the application, and in finally adopting the

recommendations of Examiner Miller, constituted an error in law or an abuse of discretion. There can be no question that Glosson knew that the Fober–H&B application in No. MC–F–8035 had been reopened for further hearing on a consolidated record with the Glosson–Fober application in No. MC–F–8485. At the time of the hearing, Examiner·Miller explained that the order opening the Fober–H&B application did not limit the reopening, and that the matter was before him for the reception of any additional evidence the parties might care to offer. It is clearly apparent that Glosson, armed with a favorable report by Examiner Letts, made a calculated decision to leave well enough alone, unless other parties to the proceeding offered additional evidence. Be that as it may, there can be no assurance that the final order of the Commission would have been different even if the Fober–H&B transaction had not been reopened. Since exceptions had been filed to the report of Examiner Letts, and his report constituted only a recommendation, the final decision rested with the Commission. This is the position taken by the Finance Review Board:

"A hearing examiner's report and order are initial decisions and mere recommendations. As such, they become the decisions of the Commission only in the absence of the filing of exceptions thereto, or a review thereof upon the Commission's own motion. See section 8 of the Administrative Procedure Act (5 U.S.C. § 1007) and Kerrville Bus Co. Inc.-Control-Painter Bus Lines, 97 M.C.C. 444. Not only were exceptions and replies timely fil-

ed to the examiner's report and order after the first hearing, thereby staying the effectiveness of that order pending final determination thereof, but the proceeding was expressly reopened for further hearing on a consolidated record with the proceeding in No. MC–F–8485."

■ Even assuming *arguendo* that the record compels a finding that the operating rights of H&B were not dormant, or if dormant, the existence of a need for their revitalization, such would not benefit Glosson in view of the conclusion of the Commission, clearly supported by the record, that the proposed transaction would not be "consistent with the public interest." In this connection, the Finance Review Board states:

"Even if we were to assume that the H & B operating rights were not dormant, or if dormant, that a need exists for their revitalization, we would still be faced with the fact that the radical change in the use to which Glosson would put the rights it would acquire, in the absence of a showing of compensatory benefits to the shipping public which would offset the probable adverse effects which would ensue to competing carriers, would render an approval of the transaction in No. MC–F–8485 inconsistent with the public interest. See Onley Refrigerated Transp., Inc.-Purchase-Glowatsky, 97 M.C.C. 373 and the case cited therein."

There can be no question that the Commission correctly found that approval of the Fober–H&B transaction would result in a new competitive service,[4] and that

4. The record supports the conclusion of Hearing Examiner Miller, affirmed by the Finance Review Board, that there was no proposal before the Commission to revive operations that could be compared with past operations, and that what Glosson was proposing was to institute for the first time completely new operations, under a combination of the Fober–H&B rights and its own, which would bear no resemblance to the manner in which Fober's rights alone, prior to the Glosson–H&B temporary authority, were operated, or the manner they were operated separately or in combination under the Fober–H&B temporary authority. The record further supports the finding that it would be inconsistent with the public interest to sanction the purchase by Glosson of Fober's rights, and to deny the application for the purchase of the rights of H&B, when to do so would result in Glosson owning rights disjoined and separated from the main body of its existing rights.

the crucial issue was whether Glosson had shown a public need for the service. Thus, the conclusion that Glosson had not shown a public need for the proposed overhead service was not in any manner dependent upon the findings of Examiner Miller that the H&B rights were dormant. Great Coastal Express, Incorporated v. United States, 243 F.Supp. 943 (D.C.1965).

█ Glosson's third contention is that the Commission erroneously denied its petition for a further hearing so as to afford it an opportunity to meet the objections stated by the Hearing Examiner and the Finance Review Board. Petitions for rehearing are addressed to the sound discretion of the Commission, and its denial of such petitions will not be disturbed in the absence of a clear showing of an abuse of discretion. Interstate Commerce Commission v. City of Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L. Ed. 1420 (1940). The rule uniformly applied in Federal courts is stated in Watkins Motor Lines, Inc. v. United States, 243 F.Supp. 436, 443 (D.C.1965), as follows:

"It is a well established principle that petitions for rehearing or reconsideration are addressed to the sound discretion of the Commission, and any denial thereof is not open to question unless it is shown that there has been a clear abuse of such discretion. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946). It is not within the purview of this court's power to determine whether a different result might have been reached had the same proffered evidence been submitted for rehearing. The court's only function is to determine whether the Commission has abused its discretion in denying the petition."

█ The Finance Review Board, in its report, entered September 24, 1965, denied Glosson's request for further hearing for the reason, among others, that it raised "no new or material issues or matters of fact or law not adequately

considered and properly disposed of by the hearing examiner in his report." The Commission, Division 3, acting as Appellate Division, in its order of March 18, 1966, found Glosson's petition for reconsideration and further hearing was not warranted for the reason that it raised no new material matter of fact or law in addition to those discussed by the Finance Review Board in its report, and no error had been established with respect to the findings and conclusions of the Board. From a consideration of the entire record, we are unable to find anything arbitrary or unreasonable in the orders of the Commission in denying the petitions for reconsideration and further hearing.

█ And finally, Glosson contends that the findings of the Commission concerning the operations of Akers and Pilot, and the necessity of protecting their operations, were not based on substantial evidence. This contention is based upon the erroneous assumption that it was the duty of Akers and Pilot to submit proof of specific traffic that would be diverted by Glosson upon approval of the proposed transactions. From a showing of both tonnage and revenue derived from shipments to and from points in New England, and the new overhead service proposed by Glosson, the Commission, with its expert knowledge of the trucking industry, concluded that substantial business enjoyed by Akers and Pilot would be subject to solicitation by, and possible diverson to, Glosson. In dealing with a similar problem, the court, in Cope v. United States, 222 F.Supp. 596 (D.C.1963), stated:

"The Board's conclusion of the likelihood of diversion of traffic by Cope is a not unreasonable projected judgment peculiarly within the Board's expert domain."

In the final analysis, since the Commission properly found that the operations to result from the proposed transactions would constitute a new and additional competitive service, the crucial issue for decision was whether a public need for the new service had been shown.

No one from the shipping or receiving public appeared to support the proposed service, or to complain about existing services. Consequently, there was a rational basis for the finding that the proposed transactions had not been shown to be consistent with the public interest. It follows that the conclusions of the Commission in withholding its approval of the proposed transactions were supported by adequate findings based upon substantial evidence, are neither arbitrary nor capricious, and are in accord with applicable law.

All other assignments of error, procedural and otherwise, not herein referred to and discussed, have been carefully examined and found to be lacking in merit.

For the reasons set forth, we conclude that Glosson should be denied relief, and the orders of the Commission should be affirmed.