David H. RATNER, Plaintiff,

v.

The UNITED STATES of America and The Interstate Commerce Commission, Defendants.

Civ. A. No. 2371.

United States District Court, S. D. Illinois, S. D.

Dec. 23, 1957.

Briggle, J., dissented.

Axelrod, Goodman & Steiner, Chicago, Ill., for plaintiff.

John B. Stoddart, Jr., U. S. Atty., Springfield, Ill., Victor R. Hansen, Asst. Atty. Gen., of U. S. and Robert S. Burk, Department of Justice, Washington, D. C., Robert W. Ginnane, Gen. Counsel, and James Y. Piper, Asst. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., Belnap, McAuliffe & Spencer, New York City, A. W. Flynn, Jr., Greensboro, N. C., Mack Stephenson, Springfield, Ill., and Harwood, Breedlove & Mittwede, Nashville, Tenn., for defendants.

Before MAJOR, Circuit Judge, and BRIGGLE and MERCER, District Judges.

MERCER, District Judge.

The plaintiff herein has attacked a number of the findings of the Interstate Commerce Commission. Many of these, in the Court's opinion, are of a minor nature and unimportant. The only contention of plaintiff which is substantial as affecting validity of the order is the one that charges the Commission of deciding the case on the theory that the applicant must offer proof of public con-

venience and necessity as set forth in Section 207 of the Interstate Commerce Act, 49 U.S.C.A. § 307, rather than proof that granting of the application will be "consistent with the public interest" as those words are used in Section 5 of the Act, 49 U.S.C.A. § 5. The report of the Commission contains the following, "The burden of showing that the proposed coordinated operations would meet a public need and would be consistent with the public interest is upon applicant." The use of these words in the order are unfortunate and do not correctly state the law, but should this case be decided upon a mere play of words? The Court should not ignore the findings of the Commission that the proposed acquisition of control would create a new service in an area already adequately served by motor carriers, and that such a new service could draw additional traffic only from existing carriers to the detriment of said existing carriers. Such a result may not properly be found to be consistent with the public interest. The term "public interest" as used in Section 5 clearly embraces the interest of competing carriers. Their interest and that of the general public is the same in preventing uneconomic transportation. The entry of plaintiff into the area would disrupt the competitive balance with harmful effect on the competing carriers without compensatory benefits to the public, and would not foster sound economic conditions in the industry. Accordingly, the transaction has not been shown to be consistent with the public interest.

In McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 380, 88 L.Ed. 544, the Court discussed the history and development of Section 5 in general and its applicability to motor carrier consolidations. In the case the Court said "Congress recognized that the process of consolidating motor carriers would result in some diminution of competition and might result in the creation of monopolies. To prevent the latter effect and to make certain that the former was permitted only where appropriate to further the national transportation policy, it

placed in the Commission power to control such developments. The national transportation policy requires the Commission to 'promote * * * economical * * * service and foster sound economic conditions in transportation and among the several carriers; * *.' The preservation of independent and competing motor carriers unquestionably has bearing on the achievement of those ends. Hence, the fact that the carriers participating in a properly authorized consolidation may obtain immunity from prosecution under the anti-trust laws in no sense relieves the Commission of its duty, as an administrative matter, to consider the effect of the merger on competitors and on the general competitive situation in the industry in the light of the objectives of the national transportation policy.

"In short, the Commission must estimate the scope and appraise the effects of the curtailment of competition which will result from the proposed consolidation and consider them along with the advantages of improved service, safer operation, lower costs, etc., to determine whether the consolidation will assist in effectuating the over-all transportation policy. Resolving these considerations is a complex task which requires extensive facilities, expert judgment and considerable knowledge of the transportation industry. Congress left that task to the Commission 'to the end that the wisdom and experience of that Commission may be used not only in connection with this form of transportation, but in its coordination of all other forms.' * * * 'The wisdom and experience of that commission,' not of the courts, must determine whether the proposed consolidation is 'consistent with the public interest.' * * * If the Commission did not exceed the statutory limits within which Congress confined its discretion and its findings are adequate and supported by evidence, it is not our function (meaning the court's function) to upset its order."

It is the opinion of the Court that in the present case the Commission did not exceed the statutory limits within which

**520**

Congress confined its discretion and its findings are adequate and supported by evidence. We do not feel constrained to set aside the order of the Commission and

It is, therefore, ordered that the Complaint herein be dismissed.

BRIGGLE, District Judge (dissenting).

I think it obvious that the Commission proceeded on an erroneous basis and imposed on plaintiff a burden not warranted by the Act. I cannot close my eyes to the fact that this of necessity affects the integrity of their findings and order. I, therefore, respectfully dissent.