**CITIZENS NATIONAL BANK OF SOUTHERN MARYLAND**

v.

**William B. CAMP, Comptroller of the Currency of the United States of America Treasury Department and Maryland National Bank, a National Bank Association organized and existing under the laws of the United States.**

**Civ. No. 70–620.**

United States District Court, D. Maryland.

Sept. 29, 1970.

Ernest N. Cory, Jr., and Cory, Boss & Rice, Laurel, Md., and Donald N. Roth-man and Robert E. Sharkey, Baltimore, Md., for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen., Washington, D. C., George Beall, U. S. Atty., and J. Frederick Motz, Asst. U. S. Atty., Baltimore, Md., Harland F. Leathers and A. James Barnes, Attys., Dept. of Justice, Washington, D. C. (John E. Shockey and E. Jerry Higginson, Attys., Office of Comptroller of the Currency, of Washington, D. C., of counsel), for defendant, Comptroller of the Currency.

David F. Albright and Thomas W. W. Haines, Baltimore, Md., for intervenor, Maryland Nat. Bank.

THOMSEN, District Judge.

Maryland National Bank, the intervenor herein (Maryland National) is the largest bank in the State, with many branches, including two in St. Mary's County, one at Leonardtown and the other at Mechanicsville. In November 1969 it applied to the Comptroller of the Currency, the defendant herein, for permission to establish a branch at Lexington Park, another town in St. Mary's County.[1] The application was opposed by Citizens National Bank of Southern Maryland, the plaintiff herein (Citizens), and by the First National Bank of St. Mary's (First), both of which had branches in Lexington Park. After a hearing before the Regional Administrator of National Banks and two other men representing the Office of the Comptroller, and after other proceedings, the Comptroller approved Maryland National's application on May 22, 1970.

Meanwhile, on May 21, Citizens had filed its complaint in this case seeking to enjoin the Comptroller from issuing a certificate to Maryland National to operate the proposed branch in Lexington Park, or, in the alternative, "to institute *de novo* proceedings", on the

---

1. St. Mary's County is the southernmost county on the Western Shore of the Chesapeake Bay, lying between the Patuxent and Potomac rivers. It has a population of some 45,000. Leonardtown, the county seat, is in the center of the coun-ty, Mechanicsville in the northwest corner. Lexington Park, a relatively new town, sprang up around what is now known as the Patuxent Naval Air Test Center when the original naval air base was established there near the end of World War II.

grounds that the hearing before the Office of the Comptroller had not been fair and that the requirements of the applicable Federal and State statutes had not been met. Maryland National intervened as a party defendant and filed a motion for summary judgment, as did the Comptroller. After various preliminary proceedings, Judge Watkins on August 3 granted leave to Citizens to seek discovery from Maryland National of the financial data referred to in the report of the Comptroller which had not been furnished to counsel for the protestants at the administrative hearing, and to test the accuracy of the material which was available at that hearing. The Judge stated that after such discovery he would reconsider the motion to dismiss, and said: "The bank is, therefore, free to proceed, at its risk, with the construction of the proposed branch".

Maryland National did not suggest the possibility that it might open a temporary branch; indeed, it had told the National Bank Examiner who investigated and reported on its application that no temporary location was planned, and that the approximate period of time to place the proposed branch in operation would be one year from the date of approval.

Nevertheless, on September 1 Maryland National moved onto the site of the proposed branch a mobile trailer with a sign "Maryland National Bank" affixed thereto, and shortly thereafter Citizens learned that Maryland National proposed to begin business in the trailer on or about September 8, the day after Labor Day. On Friday, September 4, counsel for Citizens asked the Court to fix a time on September 8 for a hearing on a motion for a temporary restraining order.[2] Counsel for Maryland National and the Comptroller were notified on September 4 of the proposed hearing, which was held on September 8 and 9.

After argument, the parties agreed that it would be desirable for each side to submit motions for summary judg-

ment and briefs in support thereof without waiting for further discovery. Citizens withdrew its request for a temporary restraining order, on the understanding that the points would be briefed and decided promptly.

There are two basic points in dispute between the parties:

1. Citizens contends that the "approval" of the Comptroller was insufficient and invalid because he made no findings, filed no opinion and did not otherwise indicate that he had complied with the applicable statutory requirement that he "ascertain" that *public* convenience and advantage will be promoted by the opening of the proposed branch. Maryland National and the Comptroller argue that the fact of the Comptroller's approval and the recommendations of his subordinates satisfy that requirement.

2. Citizens contends that it is entitled to a trial *de novo* in this Court, on the ground that the administrative hearing was inadequate and unfair. Maryland National and the Comptroller contend that the hearing was fair and adequate, and that Citizens waived the objections it now raises.

1.

The applicable Federal statute, 12 U.S. C. § 36(c) (2), allows the establishment of *branches* of national banks

"at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks. * * * "

The Maryland statute, Art. 11, § 65, Md.Ann.Code, contains no objective restriction as to location, but provides that the approval of the Bank Commissioner

---

**2.** Judge Watkins was on vacation, and Judge Northrop, who was acting as ad-

ministrative judge, assigned the matter to me.

"shall not be given until he shall have ascertained to his satisfaction that the public convenience and advantage will be promoted by the opening of any such branch or branches, * * * ".

The Comptroller is bound by this provision of the Maryland law when he considers an application for the establishment of a proposed new branch of a national bank in Maryland. First National Bank of Logan, Utah v. Walker Bank & Trust Co., 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966); First-Citizens Bank and Trust Co. v. Camp, 409 F.2d 1086, 1091 (4 Cir. 1969).

On the application in question in this case, the Comptroller made no findings of fact and issued no opinion, despite the fact that the practice of rendering written opinions setting out the basis of the Comptroller's determination had been adopted after Professor Davis had severely criticized the previous practice. See 1 Davis, Administrative Law Treatise, § 4.04 (1958 ed., 1965 suppl.); Davis, Administrative Procedure in the Regulation of Banking, 31 Law & Contemporary Problems 713 (1966),[3] and the reply thereto by the Chief Counsel to the Comptroller: Bloom, Hearing Procedures of the Office of the Comptroller of the Currency, Ibid, 723 (1966).[4] The criticism by Professor Davis echoed that made by Judge Sobeloff, dissenting in First National Bank of Smithfield, N. C. v. Saxon, 352 F.2d 267, at 273–275 (4 Cir. 1965). The opinion of the majority in that case did not disagree with the criticism. The new practice was noted in First-Citizens, supra, 409 F.2d at 1090.

In the instant case, the Comptroller merely wrote his signature after the printed word "Approve" on the third page of a three-page form. The first page contained a small amount of information, a reference to the transcript of the hearing, and under the heading "Legality-Capital, State Law, etc.", the notation: "Capital and surplus sufficient to meet requirements of both State law and Federal statutes".

The second page, headed "Recommendations", contains a 32-line comment on various factors, favorable and unfavorable, by a National Bank Examiner, con-

3. Professor Davis said, in part:
"The Comptroller and the other banking agencies have all been clearly violating section 6(d) of the Administrative Procedure Act in the many cases in which they deny applications without stating reasons. I think opinions should be written on all significant issues of law and policy, whether applications are granted or denied. * * *
"A reasoned opinion, along with findings of fact, is a safeguard against arbitrariness. Findings and opinions do not always prevent arbitrariness, but they pull in that direction. * * *" p. 718.

4. Mr. Bloom stated the new practice, as follows:
"Following the hearing, and after he has had an opportunity to consider the entire record, the Comptroller communicates his decision by letter to the applicants and to others by publication in the Office's Summary of Activities. The Comptroller has recently started to write opinions in contested cases summarizing the factual and legal bases for his decision.
"If an appeal to a court is taken from the Comptroller's decision in a case in which judicial review is available, an administrative record is submitted to the court, which record normally contains the application and all supporting economic data submitted by the applicant, all material submitted by the protestants, the report of investigation by the Comptroller's staff, a verbatim transcript of any hearings held, and the Comptroller's written decision. * * * pp. 725–726.
"Similarly, the Comptroller now generally accompanies his decisions on contested applications with opinions that summarize the factors on which he relied in reaching his conclusion. * * *
"Nevertheless, the opinions now being rendered by the Comptroller do give a clear indication of the factors on which he principally relied in reaching his decision (the details of these are of course found in the public administrative file). While it would be unwise to attempt to set inflexible precedents in such an informally supervised and subjective area of regulation, these opinions should nevertheless serve as a guide for prospective applicants to the general outlines of the Comptroller's regulatory policies." p. 727.

cluding with a recommendation that the application be approved. No reference was made to the requirement of the applicable Maryland statute. There is no indication in the reports of the members of the Comptroller's staff that any of them had considered the Maryland law. There are some comments in the reports and some evidence in the record which would support a finding or conclusion that the public convenience and advantage would be promoted by the opening of the proposed branch, and some evidence and comments which would support the opposite finding or conclusion.

The third page, headed "Recommendation Sheet", contains two recommendations. The first, by the Director, Bank Organization Division, was as follows:

"Reasons:

"Branch can be supported and applicant has established a case in terms of providing improved service & convenience.

| Favorable | T. M. BREZINSKI | 5–19–70 |
|---|---|---|
| Conclusion | Director, Bank Organization Division | Date" |

The second, by the Deputy Comptroller of the Currency, was as follows:

"Reasons:

"Lexington Park is the focal point of business activity for St. Mary's County and is the location of the Naval Air Station which provides the major economic support. Applicant has a significant loan and deposit volume from the area with the former exceeding the latter by over a million dollars. Entry will provide a needed convenience for these accounts.

| Favorable | P. J. Blanchard | May 21, 1970 |
|---|---|---|
| Conclusion | Deputy Comptroller of the Currency | Date" |

Below that conclusion, under the heading "Comptroller's Decision" and after the printed word "Approve", appeared the Comptroller's signature and the date, 5/22/70. There was no opinion, no statement of findings or conclusions, no indication what evidence the Comptroller had considered, nothing whatever to show that he had "ascertain[ed] to his satisfaction that the public convenience and advantage will be promoted by the opening of" the proposed branch.

It is a reasonable inference that the Comptroller considered particularly the final recommendation of his Deputy, immediately above the Comptroller's signature. His recommendation, quoted above, was based on the convenience of the applicant bank and its existing customers. It appears that he ignored the provision of the Maryland statute. The words "public convenience and advantage" mean something more than the convenience and advantage of the applicant bank and its existing customers at some other branch. Weer v. Page, 155 Md. 86, 93, 141 A. 518 (1928); 29 Op. Atty.Gen. of Md. 59 (1944). See also Pub. Ser. Commn. v. Philadelphia, B. & W. R. R. Co., 155 Md. 104, 122, 123, 141 A. 509 (1928).[5]

---

5. These Maryland cases are not contrary to Federal decisions. See I.C.C. v. Railway Labor Executives Ass'n, 315 U.S. 373, 376–377, 62 S.Ct. 717, 86 L.Ed. 904 (1942); State of Nebraska ex rel. Nebraska State Ry. Commission v. United States, 255 F.Supp. 718, 722 (D.Neb. 1966); Ratner v. United States, 162 F. Supp. 518, 519 (S.D.Ill.1957).

■ The Court does not hold that the Comptroller must make a finding or conclusion in the precise words of the statute. In *First-Citizens,* supra, the Court said: "The Comptroller's construction of the North Carolina 'need and convenience' criterion is to be inferred from his findings on this issue, which he concluded supported his ultimate finding that the needs and convenience of the community would be met by authorization for the opening of the two branches." 409 F.2d at 1091. The Comptroller must, however, indicate that he has considered the applicable law and based his conclusion thereon.

There are cases in other circuits involving the granting of charters to new banks, controlled by a different section, 12 U.S.C. § 27, which have sustained an action of the Comptroller by finding support for his decision in the evidence and recommendations of his subordinates, without any findings or discussion by him. Sterling National Bank v. Camp, 431 F.2d 514 (5 Cir. 1970); Warren Bank v. Camp, 396 F.2d 52 (6 Cir. 1968); Citizens Bank of Hattiesburg v. Camp, 387 F.2d 375 (5 Cir. 1968), cert. den. 391 U.S. 904, 88 S.Ct. 1652, 20 L.Ed.2d 418; Webster Groves Trust Company v. Saxon, 370 F.2d 381 (8 Cir. 1966); Ramapo Bank v. Camp, 425 F.2d 333 (3 Cir. 1970).

Whether or not these cases would be followed by the Fourth Circuit, they dealt with records which are essentially different from the record in this case, where none of the recommendations indicate that the subordinate officials considered the requirement of the Maryland statute, made applicable to this case by the controlling Federal statute.

### 2.

■ The Comptroller is not required to hold a hearing on an application, but unless he does hold an adversary hearing, a protestant is entitled to a determination *de novo* in court. On the other hand, a protestant is not entitled to a determination *de novo* except where the Comptroller failed to conduct an adversary hearing. First National Bank of Smithfield, N. C. v. Saxon, 352 F.2d 267 (4 Cir. 1965); First-Citizens Bank and Trust Co. v. Camp, 409 F.2d 1086 (4 Cir. 1969).

■ In considering an application for a branch bank the Comptroller is not bound by the requirements of § 7 of the Administrative Procedure Act, 5 U.S.C. § 556. A panel which conducts such a hearing as was held on Maryland National's application is simply an investigatory or fact-gathering organ, not having any fact-finding function. However, as was pointed out in *First-Citizens,* supra, 409 F.2d at 1090, "even in a fact-gathering procedure, due regard should be had for a party to know and meet opposing evidence with explanation or rebuttal evidence. 1 Davis, Administrative Law Treatise, § 4.04 (1958 Ed. and 1965 Supp.); § 7.16, at p. 180 (1965 Supp.)". See also Bank of Haw River v. Saxon, 257 F.Supp. 74, at 77–79 (M.D.N.C.1966).

In the instant case counsel for protestants were furnished with a detailed explanation of the procedures which would be followed at the hearing. They were granted access to the public file on the application, including: (a) the application and all supporting data and supplementary information except information deemed to be confidential; (b) all data, information, and evidence submitted by interested persons in favor of or in opposition to said application, excluding information deemed to be confidential; and (c) the report of the Agency's investigating examiner, excluding information deemed to be confidential. Neither before nor during the administrative hearing did counsel for either protestant object to the deletions. Nor did counsel for protestants seek to cross-examine the officers or employees of Maryland National who were present at the hearing but did not testify, or those who had prepared the information. Protestants were permitted to present testimony and other evidence, and counsel for all interested parties made oral arguments.

After the hearing counsel for Citizens wrote the Regional Administrator of Na-

tional Banks, who had presided at the hearing, requesting "a rehearing under circumstances that would permit the opponents to know the full content of the application without any figures withheld". The Regional Administrator replied, stating: "The information treated as 'confidential' in this Office's Report of Investigation of the branch application includes information taken from Reports of Examination and interoffice or interagency memorandum such as are not available to the public pursuant to the provisions of Paragraph 4.16 of Comptroller's Regulation 4 (12 CFR 4). The information treated as 'confidential' in the applicant's materials was such as to be regarded by it as proprietary in nature and, accordingly, disclosure of which this Office does not believe would be fair to the applicant or the private parties involved."

Counsel for Citizens did not take advantage of the provisions of the applicable regulation, Title 12, C.F.R., Ch. 1, § 4.17(c), which provides: "(c) *Appeal.* Any person who is denied access to a document of the Comptroller of the Currency by any official or employee of the Comptroller's office may file with the First Deputy Comptroller a written request for a review of such denial."

■ In their brief and argument in this Court, counsel for Citizens indicate the information which they sought. It is impossible to tell from the present record how much of it was properly treated as confidential information or trade secrets. It does appear, however, that Citizens failed to take advantage of the right of administrative appeal available to it. See the regulation quoted above and *First-Citizens,* supra, 409 F.2d at 1088, 1089, and the cases there cited.

#### Conclusion

The approval of the Comptroller was insufficient and invalid.

Citizens has not shown a right to a determination *de novo* at this time.

The case will be remanded to the Comptroller to reconsider the application,

giving due weight to the applicable Maryland statute. If Citizens seeks an opportunity to examine and attempt to refute the material which was not made available to it, the Comptroller or his Deputy should determine whether the material should still be regarded as confidential, in the light of the Maryland statute. The Comptroller may conclude that certain material should be furnished to counsel under stipulations which will assure that it will not be improperly used. If the Comptroller's final decision on the application is adverse to Citizens, and further court proceedings are had, the material not made available to counsel should be submitted sealed to the Court, so that it may review the propriety of the ruling.

An injunction will be issued restraining Maryland National from operating a branch in Lexington Park unless and until a new approval is issued by the Comptroller in accordance with this opinion and the order to be entered thereon.

Counsel should agree within seven days upon an order and injunction giving effect to the conclusions in this opinion.