## CITIZENS NATIONAL BANK OF SOUTHERN MARYLAND *

v.

**William B. CAMP, Comptroller of the Currency of the United States Treasury Department.**

Civ. No. 70–1473.

United States District Court,
D. Maryland.

Sept. 21, 1971.

---

* On August 11, 1971, Citizens National Bank, plaintiff herein, converted into a State bank under the name Maryland Bank and Trust Company pursuant to 12 U.S.C. § 214 et seq.

Donald N. Rothman and Robert E. Sharkey, Baltimore, Md., and Ernest N. Cory, Jr., and Cory, Boss & Rice, Laurel, Md., for plaintiff.

George Beall, U. S. Atty., Baltimore, Md., L. Patrick Gray, III, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., and John Austin, Staff Atty., Comptroller of the Currency, Washington, D. C., for defendant.

David F. Albright and Thomas W. W. Haines, Baltimore, Md., for Maryland National Bank.

THOMSEN, District Judge.

This action arises out of plaintiff's objection to the approval by the Comptroller of the Currency of an application by Maryland National Bank to open a branch office in Lexington Park, St. Mary's County, Maryland. In a previous action arising out of the same application (70–620–T), this Court held that the Comptroller's original approval of that application was insufficient and invalid because it failed to show that the Comptroller had considered the applicable law and based his conclusion thereon. The case was remanded to the Comptroller to reconsider the application giving due weight to the applicable Maryland statute. 317 F.Supp. 1389.

On remand the Comptroller voluntarily gave both the applicant and the protestant the right to produce additional documentary evidence and to respond to or comment upon the evidence submitted by the other party. Subsequently, on December 3, 1970, the Comptroller issued an opinion setting forth his reasons for reaffirming the approval of Maryland National's application.

On December 30, 1970, Citizens filed the present action, alleging (A) that the refusal of the Comptroller to conduct an adversary hearing on remand and his failure to make known to plaintiff those factors upon which he based his decision entitled plaintiff to *de novo* review, and (B) that "the purported approval of the Comptroller issued on December 3, 1970 is based on misinterpretation of law, and is in fact contrary to, the substantial evidence of record, and is arbitrary and capricious, constituting an abuse of administrative discretion" for three reasons, which will be discussed below.

The Comptroller on March 19, 1971, moved this Court to dismiss the complaint or, in the alternative, to grant summary judgment in its favor.

### I. Res Judicata

The Comptroller contends that the defense of *res judicata* should be a

bar to the present action, arguing that plaintiff is attempting to relitigate questions which it raised or could have raised in the prior action. That point is without merit.

Plaintiff's first contention—that he was denied an adversary hearing on remand—was not a matter capable of being raised in the former action. Similarly, plaintiffs' second point—that the approval on remand was arbitrary, unlawful and against the evidence of the record—was not a matter disposed of by this Court in the earlier action or which could have been raised by the plaintiff therein.

## II. De Novo Review

Plaintiff contends that it is entitled to de novo review (1) for lack of an adversary hearing on remand, and (2) because the Comptroller failed to make known the factors on which he intended to base his decision.

This Court remanded to the Comptroller "to reconsider the application, giving due weight to the applicable Maryland statute".[1] This Court did not hold that

further evidence need be taken. The Comptroller himself decided to reopen the record.

Plaintiff requested the Comptroller: (a) to conduct a further hearing relating to Maryland National's application; (b) at such hearing to summon or otherwise require four designated officers of Maryland National to be present so that plaintiff could cross-examine them; and (c) to receive additional evidence on plaintiff's behalf relating to the application. Plaintiff's request for another full hearing was denied, as was its request that it be permitted to cross-examine designated officers of Maryland National. The Comptroller allowed both sides to submit additional documentary evidence and to reply to the material furnished by the other side. As it turned out, most of the material submitted on reconsideration was duplicative of the original record before the Comptroller.

At a hearing in the present case, the Court requested counsel for plaintiff to submit a list of the points they considered to be new matters on which plaintiff contends that it was entitled to a

---

1. In his opinion after remand the Comptroller said: "The Comptroller understands the Court's invalidation of his previous approval of the Maryland National branch application to rest upon its conclusion that the Comptroller should make public, through an opinion or 'findings and conclusions' his reasons for granting a branch application. The Comptroller respectfully disagrees with this conclusion."

The Comptroller misconceives the opinion of this Court in the former case. This Court did not hold that the Comptroller "must make public, through an opinion or 'findings and conclusions' his reasons for granting a branch application", although it is certainly desirable that he do so, for reasons stated by Judge Sobeloff in his opinion in First National Bank of Smithfield v. Saxon, 4 Cir., 352 F.2d 267, at 273–275, and by Professor Davis in the works cited in the former opinion of the Court, 317 F.Supp. 1389 (1970). This Court held, in its former opinion, that the Comptroller must "indicate that he has considered the applicable law and based his conclusion thereon". This can be done by a short statement, perhaps simply

adopting or referring to the recommendation of one of his subordinates who has referred to and considered the applicable law.

In his brief filed with this Court in Farmers National Bank of Annapolis v. Camp, 71–70–T, the Comptroller stated that he has "serious reservations as to the wisdom in general of attempting to 'bind' his discretion on branch applications by reference to subjective non-location restrictions in state statutes, particularly when the state statute may be so interpreted as to conflict with federal criteria", even though the Fourth Circuit in First-Citizens Bank & Trust Co. v. Camp, 409 F.2d 1086 (4 Cir. 1969), specifically rejected the argument that the Comptroller "is bound only by state capitalization and state location requirements", and not by North Carolina's "need and convenience" and "solvency of the branch" criteria. 409 F.2d at 1091.

In view of the Comptroller's continued resistance to the rulings of the Fourth Circuit, it is all the more important for a reviewing court, in this Circuit at least, to know what law the Comptroller considered in making his decision.

full hearing, in order to aid the Court in determining whether plaintiff is entitled to a trial *de novo* because of any failure of the Comptroller to hold an adequate adversary hearing.

Counsel for plaintiff filed a list of four points (one with several subdivisions).[2]

The first two points were:

"1. Millison Shopping Center Has Been Successful. 100,000 square feet is either occupied or under construction, and all is leased except for 800 square feet.

"2. Millison is planning to build another 100,000 square feet."

The issue of the successful operation of the Millison Shopping Center became an issue on remand when Citizens charged that Maryland National's "underlying motivation for [its] application is simply an attempt by it to rescue its investment in the Millison Shopping Center", and submitted documentary evidence in support of its contention. Maryland National sought to refute this charge by offering evidence of the facts set out in 1 and 2, above. Citizens had the opportunity to deny the truth of those facts (which do not appear to be disputed) and to present arguments with respect thereto. Sufficient information was placed before the Comptroller so that he could determine the facts and decide the point.

"3. Why they failed to make loans to St. Mary's County, Airport & Nursing Home as bearing on their commitment to the community."

The issue of the proposed loans to these facilities was first raised by Citizens on remand. Maryland National responded to the charge, stating that the reason for the noncompletion of the loan was a legal question, which was not disputed.[3] There was adequate information presented by the parties from which the Comptroller could decide the point.

"4. All matters raised on Adm. file 111"

On Page 111 of the Administrative File on Reconsideration Maryland National Bank listed "supplementary factual information (seven items)" to which Citizens responded.[4]

These items were matters of public record or knowledge, available after the original hearing, such as total retail sales in St. Mary's County for 1969, the opening of a new dormitory at the Patuxent Naval Air Station, the new housing construction in the County, and new construction at the Millison Shopping Center. Citizens responded to each item, admitting the truth of most of them, but disputing their significance. There was no need for a further hearing before the Comptroller with respect thereto. This Court rejects plaintiff's request for *de novo* review based upon the lack of an adversary hearing on remand.

■ Nor is Citizens entitled to a hearing *de novo* in this Court because the Comptroller denied its request to cross-examine certain personnel of Maryland National. Citizens did not state the purpose of the cross-examination. If it was to deal with the new matters discussed above, there was no prejudice from its denial; if it was intended to deal with the points raised at the original hearing, Citizens was not entitled to use the remand as an oppor-

---

2. Maryland National filed a memorandum dealing with each point. Plaintiff and the Comptroller elected not to reply to Maryland National's memorandum.

3. "The implication that Maryland National Bank did not make a loan commitment to furnish funds for the St. Mary's County Nursing Home or St. Mary's County Airport, is equally unsupported in truth. A commitment was made by Maryland National Bank to each of these projects, as is

stated in the Application; however, the government of St. Mary's County did not exercise the agreement and settle for the loan because they were advised by their legal counsel that the County was not legally authorized to borrow money for these projects." (P. 24, Record on Remand).

4. See pages 40–41 of the Record, which is numbered in reverse.

tunity to bolster the original record. This is especially true when at the initial hearing counsel for protestants did not seek to cross-examine the officers or employees of Maryland National who were present.

Citizens requested that it be granted leave to present additional evidence relating to the application. This request was granted by the Comptroller to the extent that he permitted both parties to present written evidence and arguments, and to answer the evidence and arguments of the other side. The order of this Court in the previous case did not require the Comptroller to go even that far; his requirement that the new evidence be in writing was not unreasonable.

Citizens contends that it is entitled to a trial de novo because the Comptroller did not tell Citizens in advance all of the factors upon which he planned to make his decision and give Citizens an opportunity to present evidence on those factors.

It appears from Citizens' briefs and argument that the factors to which Citizens refers are concerned with the lending policies of Citizens itself and certain activities of its officers. The other factors referred to by the Comptroller were matters as to which evidence had been taken, or were matters of common knowledge, such as the population of the County and the development of the Patuxent Naval Air Station.

■ Citizens misconceives the nature of the proceeding before the Comptroller. It is not a civil action in which issues are framed by pleadings or pretrial orders.

The nature of such a proceeding is discussed at length in Farmers National Bank of Annapolis et al. v. Camp, Civil 71–70–T, decided this day, 345 F.Supp. 622. That discussion need not be repeated at length here, but is adopted as part of this opinion.

In First-Citizens Bank and Trust Co. v. Camp, 409 F.2d 1086 (4 Cir. 1969), the Fourth Circuit held that in considering an application for a branch bank, the Comptroller is not bound by the requirements of what is now 5 U.S.C. § 556, and therefore must have concluded that the proceeding is not an "adjudication" within the meaning of what is now § 554. The principal discussion in First-Citizens was whether the hearing was "adversary".

■ Whether or not the proceedings before the Comptroller on the application of Maryland National were adjudicatory, as that word is used in Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), that would not settle the question of plaintiff's right to de novo review, because this Court concludes, for the reasons set out below, that plaintiff has failed to satisfy the other half of the first Overton Park ground for de novo review—they have failed to show that the agency fact-finding procedures were inadequate under all the circumstances of this case.[5] This Court further concludes that protestants did have an "adversary" hearing, as that term has been used by the Fourth Circuit.

Counsel for Citizens was familiar with the nature of proceedings before the Comptroller, outlined in the Comptroller's Policy Guidelines for National Bank Directors. They knew that the Comptroller considers (a) his knowledge of the banking industry as a whole, (b) the knowledge his office has of the economy of the State and the banking market of the County and the service area, gained from the reports of examination of national banks in the area and from various sources available to the public, as well as (c) the evidence offered by the applicant and protestants. Particularly, Citizens knew from the Comptroller's Policy Guidelines that he would consider, inter alia, the ability and willingness of the existing banks in the

---

5. The second ground for de novo review recognized by Overton Park is not applicable, because this is not a proceeding to enforce agency action.

service area, as well as of the applicant, to meet legitimate credit demands and support local economic growth. Citizens also was familiar with the objections which the Comptroller had made from time to time about Citizens' lending policies and the activities of its officers.[6]

In the previous action arising out of the application of Maryland National, this Court reviewed in its opinion the information which was made available to protestants in the administrative proceedings. See Citizens National Bank of Southern Maryland v. Camp, 317 F. Supp. 1389, at 1394, 1395 (D.Md.1970).

Citizens' quarrel is really with the conclusion arrived at by the Comptroller based upon facts as to which there was little or no dispute. This Court concludes that Citizens is not entitled to a trial *de novo* because the Comptroller considered the matters referred to his opinion to which Citizens takes exception.

### Summary Judgment

█ Citizens' first argument is that the "Comptroller has arbitrarily and capriciously attempted to utilize his power to approve branch bank applications pursuant to 12 U.S.C. § 36(c) to sanction, punish, and otherwise inflict irreparable harm on plaintiff for alleged violations of Federal banking laws and banking practices". This argument cannot prevail. Whether or not the Comptroller is upset because of the way Citizens has operated in the past, he was entitled to

consider the facts in deciding whether to grant Maryland National's application. Citizens has not shown that he did more.

Finally, Citizens contends that: "(b) The Comptroller failed to make findings based upon legally sufficient evidence that Maryland National's branch is necessary or needed in the general public interest, as intended by the National Banking Act, and failed to make findings based upon legally sufficient evidence that the branch bank would promote the general public convenience and advantage, as required by the Maryland Statute, Article 11, Section 65, Annotated Code of Maryland (1968 Repl.Vol.)"; and that "(c) The substantial evidence of record was to the effect that the new branch bank was neither necessary nor needed and that it would not promote the general public convenience and advantage. The Comptroller's failure to consider this evidence constitutes arbitrary and capricious action."

There is no merit to these contentions. The Comptroller's opinion indicates that he did consider the applicable factors, which are discussed at length in the opinion of this Court filed today in Farmers National Bank of Annapolis v. Camp, 345 F.Supp. 622.

█ There was substantial evidence to support the findings and conclusions of the Comptroller and his decision to approve Maryland National's application.

Judgment will be entered in favor of defendant.

---

6. An affidavit from the president of Citizens indicates that he was aware of the criticisms. The affidavit states that "the Comptroller has routinely pointed out to its Board of Directors various matters dealing with the Bank's lending policies, management, technical violations of the Banking laws, etc., which required corrective action". The affidavit continues, " * * * It is true that Citizens has extended credit to corporations and businesses controlled or owned by Directors of the bank." The president also states that he was aware that the " * * * Comptroller has classified loans as 'substandard'

for various strained technical reasons * * * ", and that " * * * there have been instances when loans to individuals or corporations have exceeded the bank's legal limit * * * ". While admitting these facts, the President set out the circumstances surrounding the alleged misconduct, other justifications, and corrective measures taken to offset the observations of the Comptroller and his office. Citizens could have submitted to the Comptroller an affidavit or other evidence or argument similar to those contained in that affidavit.